Henry T. DART and the Libertarian
Party of Louisiana

v.

James H. BROWN, Secretary of State for
the State of Louisiana, and Edwin A.
Lombard, Clerk of the Criminal District
Court for the Parish of Orleans, State of
Louisiana.

Civ. A. No. 82–96.

United States District Court,
E. D. Louisiana.

Feb. 3, 1982.

Henry T. Dart, pro se, and Andrew M.
Weltchek, New Orleans, La., for plaintiffs,
Henry T. Dart and the Libertarian Party of
Louisiana.

Louis M. Jones, Joseph I. Giarrusso, Jr.,
and Joan C. Wetzel, New Orleans, La., for
defendant, James H. Brown, Secretary of
State for the State of Louisiana.

Ronald P. Nabonne, New Orleans, La.,
for defendant, Edwin A. Lombard, Clerk of
Criminal Dist. Court for the Parish of Orleans, State of Louisiana.

MEMORANDUM OPINION

ROBERT F. COLLINS, District Judge.

Plaintiff, Henry T. Dart, is a duly qualified candidate in the February 6, 1982 election for the District B seat of the New
Orleans City Council and is a member of
the Libertarian Party of Louisiana, also a
plaintiff in this action. The plaintiffs allege that LSA–R.S. 18:441, 551(D), 551(E)
violate the First and Fourteenth Amendments to the United States Constitution,
and the Louisiana Constitution Article 1
§ 3 (1974). In particular, plaintiffs allege
that these state laws afford a different and
impermissibly discriminatory access to the
election ballot for so-called recognized parties, depriving the plaintiffs' constitutional
rights to equal protection of the law. The
defendants in this matter are James H.
Brown, Secretary of State for the State of
Louisiana, and Edwin A. Lombard, Clerk of
the Criminal District Court for the Parish
of Orleans, State of Louisiana. Jurisdiction
is invoked pursuant to 28 U.S.C. § 1343.

The facts in this case can be simply stated and have been largely stipulated by the parties.

On December 18, 1981, Dart qualified as a candidate for Councilman for District B of the City of New Orleans. The election is scheduled for February 6, 1982. In his Notice of Candidacy filed with the Clerk of the Criminal District Court for the Parish of Orleans, Dart checked the box indicating that he was not affiliated with a recognized party and then typed in "Libertarian Party" next to that box. On December 21, 1982, the Clerk of Criminal District Court, Edwin A. Lombard, certified to the Secretary of State, James H. Brown, the candidates qualified for the election. The certification lists the political affiliation of all candidates as Democrats, except Dart, who is listed as having no party affiliation. On January 4, 1982, Dart wrote to Brown and Lombard and demanded that "Libertarian Party" be placed after his name on the ballot. Melvin L. Bellar, Legal Counsel of the Secretary of State, responded by letter dated January 7, 1982, stating that the Secretary of State lacked authority to place Dart's party affiliation on the ballot because his was not a recognized party. In its present form, the ballot indicates the party affiliation of all candidates for District B Councilmen as Democrats, except Dart, who is listed without party affiliation. Dart and the Libertarian Party of Louisiana filed this lawsuit on January 11, 1982, seeking to have the Libertarian Party placed along with Dart's name on the ballot for the February 6, 1982 election or, alternatively, enjoining defendants from placing the party affiliation of any candidate on the ballot for the February 6, 1982 election. Plaintiffs then moved for a temporary restraining order and preliminary injunction. A hearing on the preliminary injunction was held on January 29, 1982 at 9:00 a. m., and the Court, pursuant to stipulation by all parties, ORDERED the trial on the merits consolidated with the hearing on the application for a preliminary injunction. Fed.R. Civ.P. 65(a).

## DISCUSSION

Under the Louisiana Election Code, only a "recognized party" can be listed on an election ballot.

Political party designation. The political party designation of a candidate who is registered as being affiliated with a recognized political party shall be printed on the primary or general election ballot on the same line and immediately after or below the candidate's name. If a candidate is not affiliated with a political party, the space after his name shall be left blank.

LSA–R.S. 18:551(D).[1] A party is recognized "if one of its candidates for presidential elector received at least five percent of the votes cast in this state for presidential electors in the last presidential election, or if at least five percent of the registered voters in the state are registered as being affiliated with the political party." LSA–R.S. 18:441. At the present time, only the Democratic Party and the Republican Party are recognized in Louisiana.

Initially, the plaintiffs seek to have this Court apply "strict scrutiny" in reviewing these state election laws on the grounds that the said statutes impinge upon the plaintiffs' constitutional right to vote and first amendment right to freedom of speech. No authority has been cited by the plaintiffs which would warrant the application of strict scrutiny under the present circumstances. Where state law limits initial access to the ballot, the doctrine of strict scrutiny has been invoked because in that situation only a compelling state interest can justify such a direct burden upon the right to vote. *See Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). The right to vote, or access to the ballot as a candi-

---

1. This particular statute is inapplicable to national elections for president and vice president, where a candidate's party affiliation may be designated on the ballot regardless of whether a candidate is nominated by a recognized party or by nominating petition. LSA–R.S. 18:1259.

date, is not an issue in the present case. Dart is admittedly a qualified candidate in the election for Councilman from District B, and his name is on the ballot. The only question to be resolved by this Court is whether Dart's political affiliation should be designated on the ballot in the same fashion as candidates of recognized political parties. This controversy raises only vague allegations of unconstitutional treatment, requiring something less than strict scrutiny. As the Court stated in *Clough v. Guzzi*, 416 F.Supp. 1057, 1067 (D.Mass.1976):

> Voters have no constitutional right to a wholly rational election, based solely on reasoned consideration of the issues and the candidates' positions, and free from other 'irrational' considerations .... We conclude that, even assuming some positional advantage here, the voters' right to choose their representatives is not sufficiently infringed as to warrant strict scrutiny ....

Instead, this Court, in accordance with the methodology employed in *Krasnoff v. Hardy*, 436 F.Supp. 304, 308 (E.D.La.1977), will review the merits of the plaintiffs' cause of action and determine whether Louisiana has a legitimate, rational reason for distinguishing between major parties and non-recognized parties.[2]

■ Plaintiffs have cited no authority requiring a state to designate the political persuasion of an independent candidate. In fact, the jurisprudence is firmly against the plaintiffs. In *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), the Supreme Court held that a Georgia election law, which required the nominee of an independent political body to file a nominating petition signed by not less than five percent of the eligible voters before the candidate and his party could appear on the ballot, does not abridge constitutional rights of free speech and association, and did not violate the equal protection clause. The Supreme Court concluded, as does this Court, that the state has a valid, rational basis for drawing a distinction between candidates from a major party and candidates nominated by smaller, independent parties.

The fact is that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. Georgia has not been guilty of invidious discrimination in recognizing these differences and providing different routes to the printed ballot. Sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike, a truism well illustrated in *Williams v. Rhodes*, [393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24] *supra*.

There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot— the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election.

*Id.* at 441–42, 91 S.Ct. at 1975–76. Similarly, the same state interests in avoiding confusion, deception, and frustration, are served by requiring political parties to attain some significant modicum of support before the party's candidate can be identified as such in elections other than the presidential election. *Krasnoff v. Hardy*, *supra* at 310; *Mathers v. Morris*, 515 F.Supp. 931, 936 (D.Md.), *aff'd*, 649 F.2d 280 (5th Cir.), *aff'd*, —— U.S. ——, 102 S.Ct. 467, 70 L.Ed.2d 241 (1981).

Louisiana presently operates under an open primary election system. Any person who desires to become a candidate in a primary election may qualify as a candidate by timely filing a Notice of Candidacy, ac-

---

**2.** Plaintiffs also allege a claim under the equal protection guarantee of the state constitution. La.Const.Art. 1 § 3. This clause, however, is merely a restatement of the equal protection clause of the United States Constitution. Therefore, the Court's analysis of the federally protected claims is equally applicable to the cause of action alleged under the state constitution. *Burmaster v. Gravity Drainage District No. 2 of the Parish of St. Charles*, 366 So.2d 1381 (La.1978).

companied either by a nominating petition or by the qualifying fee and any additional fee imposed. LSA–R.S. 18:461.[3] If each candidate were allowed to have his party affiliation listed on the ballot, this would only compound the pandemonium associated with open primaries. Indeed, some candidates may be endorsed by multiple political parties and the very notion of a political party becomes indefinite without some minimal voter requirement. Where would the state draw a line?

Plaintiffs have suggested that the most rational solution is to eliminate the party affiliation of all candidates from the ballot. The Court, however, has already ruled that the public has no constitutional right to a wholly rational election. It is the role of the legislature to weigh and balance the policy consideration of a particular enactment. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The Court's task in this case is to simply determine whether the law has a rational basis. The Court has found a legitimate rational reason for distinguishing between recognized parties and non-recognized parties, and the mere fact that plaintiffs propose an allegedly more rational election ballot does not in any manner deter the constitutionality of the state statutes. *See Anderson v. Winter*, 631 F.2d 1238, 1240–41 (5th Cir. 1980).

Moreover, it may be in the best public interest to allow candidates affiliated with recognized parties to designate their party status on the ballot because at the very least, voters will be able to determine which candidates have aligned themselves with the major political parties. Consequently, the law brings a measure of order to the election ballot by permitting some information concerning a candidate's political background without going to the extreme of permitting every candidate to designate any "party" real or imagined, serious or otherwise, which might ultimately end up confusing the public.

The evidence at trial clearly demonstrates that the law does not place any undue burden upon minor political parties. Wade Brisbin, a member of the State Central Committee for the Libertarian Party, testified that the Libertarian Party was actively seeking to attain the status of a recognized political party, especially during presidential campaigns. In the 1980 presidential election, the Libertarian Party was designated on the ballot along with its nominee, Ed Clark. Since a party can become recognized if it obtains at least five percent of the state vote in a presidential election, every vote cast for the presidential electors of the Libertarian Party counts both toward the election of its candidate and toward meeting the requirements of a recognized party. In effect, members of the Libertarian Party, or other independent parties, have an added incentive to vote for the nominee of their party, because while an outright victory for the party candidate may be unthinkable, achieving the status of a recognized party is a more reasonable goal and provides the first step toward the long term success of the party. Brisbin stated that the Libertarian Party encountered no impediment in its effort to obtain recognition during the last presidential campaign.[4] According to the testimony of Louis Bruder, Director of Registration, voters were not barred nor in any way restricted from registering as affiliated with the Libertarian Party, and he knew of no activities by election officials which could impede state recognition of the Libertarian Party. In short, Louisiana law does not insulate the major parties from competition by newer or smaller parties. Instead, the law provides an orderly avenue for upstart parties to achieve state recognition.

---

**3.** Dart orally represented to the Court that he qualified as a candidate for District B Councilman by filing his Notice of Candidacy and paying a fee of $250.00.

**4.** In the 1980 presidential election, the record indicates that the Libertarian Party received only 8,240 votes out of 1,548,591 total votes cast in the State of Louisiana, much less than one percent of the total state vote (Exhibit D–1).

CONCLUSION

Based upon the foregoing authority, the Court finds that the Louisiana statutes which allow recognized parties access to the ballot do not violate the plaintiffs' constitutionally protected rights. The Court is also convinced that denying plaintiffs relief will not substantially impair Dart's chances at the election, and therefore, plaintiffs have failed to demonstrate the threat of irreparable harm in this case. By contrast, the State of Louisiana, and ultimately the voting public, would be seriously affected by a sudden disruption of this election. *Krasnoff v. Hardy, supra* at 310. Accordingly, plaintiffs' motion for preliminary injunction is DENIED, and Judgment shall be entered in favor of the defendants.